## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ERIN F.,[1]

      **Plaintiff,**

                                    **Case No. 2:20-cv-16025**

    **v.**                              **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Erin F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

    On February 9, 2017, Plaintiff protectively filed her application for a period of disability and disability insurance benefits, alleging that she has been disabled since July 21, 2016. R. 85,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

101, 177−85. The application was denied initially and upon reconsideration. R. 103−07, 109−14.

Plaintiff sought a *de novo* hearing before an administrative law judge. R. 118−20. Administrative

Law Judge ("ALJ") Alexander Klibaner held a hearing on May 8, 2019, at which Plaintiff, who

was represented by counsel, testified, as did a vocational expert. R. 43−69. In a decision dated

June 19, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the

Social Security Act from July 21, 2016, Plaintiff's alleged disability onset date, through the date

of that decision. R. 13−37. That decision became the final decision of the Acting Commissioner

of Social Security when the Appeals Council declined review on September 15, 2020. R. 1−6.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 30, 2021,

Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to

28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On that

same day, the case was reassigned to the undersigned. ECF No. 8. The matter is now ripe for

disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 38 years old on July 21, 2016, her alleged disability onset date. R. 35. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 16.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder; anxiety disorder; post-traumatic stress disorder ("PTSD"); anxiolytic dependence; and seizure disorder/epilepsy. *Id*. The ALJ also found that Plaintiff's diagnosed degenerative disc disease in her lumbar and cervical spines, and insomnia were not severe impairments. R. 16−18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18−20.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but subject to various non-exertional limitations. R. 20−35. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an administrative assistant. R. 35.

At step five, the ALJ found that a significant number of jobs−*i.e.*, jobs as a hand packer, marker, and printed circuit board screener−existed in the national economy and could be performed by Plaintiff. R. 36−37. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 21, 2016, her alleged disability onset

date, through the date of the decision. R. 37.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in failing to find, at step two, that Plaintiff's lumbar and cervical degenerative disc disease and insomnia were severe impairments and in failing to consider these impairments throughout the sequential analysis, including in his determination of Plaintiff's RFC. *Plaintiff's Moving Brief*, ECF No. 18, pp. 10−27. Plaintiff further argues that the ALJ failed to properly consider Plaintiff's subjective statements and the medical opinion evidence. *Id*. at 27−39. Plaintiff contends that these failures render the decision unsupported by substantial evidence and serve as a basis for remand. *Id*. For the reasons that follow, Plaintiff's arguments are not well taken.

### A.    Lumbar and cervical degenerative disc disease

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding

that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at \*6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at \*8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

In the case presently before the Court, the ALJ decided in Plaintiff's favor at step two, finding that Plaintiff's major depressive disorder; anxiety disorder; ("PTSD"); anxiolytic dependence; and seizure disorder/epilepsy were severe impairments. R. 16. The ALJ also explained why Plaintiff's lumbar and cervical degenerative disc disease was not severe, reasoning as follows:

> With respect to the claimant's alleged back pain, the medical evidence reflects that she presented to the emergency room at Robert Wood Johnson University Hospital on June 20, 2016, with complaints of back pain. At that time, *x-rays of her lumbar and thoracic spines were normal*, she was diagnosed with back pain, and she was given prescriptions for Ibuprofen and Flexeril (Exhibit 2F). It also reflects that an MRI of her lumbar spine on June 20, 2016, demonstrated *multilevel degenerative disc disease at L3-L4, L4-L5, and L5-Sl, without evidence of spinal stenosis* (Exhibit 2F). An MRI of the claimant's *thoracic spine demonstrated no definite herniated nucleus pulposus, spinal stenosis, or foraminal narrowing*, although it demonstrated a diffuse disc bulge without definite herniated nucleus pulposus at C6 and C7, which was characterized as *minimal degenerative disc disease of the lower cervical spine* (Exhibit 2F). The record also documents the claimant's reports to Dr. Yalkowsky, the State agency consultative examiner on April 5, 2017, that ever since her seizure on July 20, 2016, she had experienced chronic back pain (Exhibit SF). Records from Dr. Lukenda, the claimant's primary care physician, also reflect that following complaints of low back pain on September 12, 2017, he

9

*diagnosed the claimant with a muscle strain* (Exhibit 13F). The record also reflects that an MRI of the claimant's *cervical spine* on November 6, 2018, demonstrated *mild reversal of lordosis, and degenerative disc disease with a tiny central extruded disc herniated disc at C4-5 without impingement* (Exhibit 19F). It also documents the claimant's reports to Dr. Lukenda on December 11, 2018, that she has been suffering from left neck pain since Monday, and that while she tried to shake it off, it hurt (Exhibit 20F).

However, the record also reflects that while the claimant may suffer from degenerative disc disease in her lumbar and cervical spines, *it is only mild in degree.* The record also documents no persistent complaints by the claimant that she suffers from neck and/or low back pain nor is there evidence that she has received any treatment for it since receiving prescriptions for Ibuprofen and Flexeril in June 2016 (Exhibit 2F). There is also no evidence that the claimant's neck and/or low back pain has been deemed severe enough to warrant treatment with pain medication, and she lists none in her updated medication list in Exhibit 16E, or referrals to physical therapy, to an orthopedist, orthopedic surgeon, or pain management specialist. *Records from Dr. Dixit, the claimant's neurologist, also reflect that the claimant's neurological exams have been consistently normal, including her gait, her muscle strength and tone and sensation in her upper and lower extremities* (Exhibits 9F, 15F, 18F, 19F). The claimant also testified that *she can carry laundry up from the basement*, even if she gets winded and her back hurts when doing so, *shop for groceries* with her mother, *vacuum* when she feels up to it mentally, and *pick up after her dogs* in the yard. Based on this evidence, I find the claimant's alleged back pain and lumbar and degenerative disc disease to be not severe.

R. 16−17 (emphasis added). In other words, the ALJ considered, *inter alia*, Plaintiff's normal or minimal x-ray and imaging findings; normal examination findings, including Plaintiff's gait, muscle strength, tone, and sensation in her upper and lower extremities; as well as her ability to perform daily activities when determining that Plaintiff's lumbar and degenerative disc disease was not severe at step two. *Id.*

Although the ALJ did not expressly consider Plaintiff's degenerative disc disease at steps three and four, he again considered Plaintiff's ability to perform daily activities. R. 19−20, 22, 33. In addition, at step three, the ALJ expressly stated that he had reviewed the medical evidence of record in determining whether Plaintiff suffered "from any *physical* or mental impairments, or combination of impairments, that meet or medically equal any listing[,]" and found that Plaintiff

did not. R. 18 (explaining further that he "considered the opinions of the State agency medical consultants who examined this issue at the initial and reconsideration levels of the administrative review process and who reached the same conclusion" and noting that "no designated acceptable medical source has concluded that the claimant's impairments medically equal a listing. The record also contains no opinions from the claimant's treating physicians that any of her impairments are of listing level severity") (emphasis added). Further, at step four, the ALJ explicitly addressed the effect of Plaintiff's physical impairments on her ability to work when crafting Plaintiff's RFC,[4] including, *inter alia*, assigning "great weight" to a state agency reviewing medical consultant who had opined that Plaintiff could perform work at all exertional levels, as follows:

> In reaching a finding that the claimant is not disabled, I have considered the record as a whole. With respect to the claimant's alleged physical impairments, I have given great weight to the opinion of Dr. Leonard Comess, the State agency medical consultant at the reconsideration level in Exhibit 3A. I find Dr. Comess's assessment that despite her epilepsy the *claimant retains the ability to perform work at all exertional levels with the non-exertional limitations so noted*, to be consistent with evidence that the claimant has not suffered a seizure since July 2016, that her EEGs after September 2016, have all been normal, as have imaging of her head and brain, and with evidence that there is some question as to the etiology of her seizures

---

[4] The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she cannot climb ladders, ropes, or scaffolds; she should avoid workplace hazards such as unprotected heights and machinery; she is able to remember, understand, and carry out simple routine tasks, defined to include unskilled tasks that take no more than a month to learn the techniques, acquire the information, and develop the facility needed for the average performance of those tasks; she can carry out those tasks for 2-hour periods throughout a 40-hour workweek; she is able to make simple work-related decisions; she can tolerate occasional interaction with the general public; and she can tolerate occasional simple changes in the work routine.

R. 20.

> and whether she truly suffers from a seizure disorder at all. I also find Dr. Comess's assessment to be consistent with evidence that the claimant was driving again by March 2017 and with Dr. Dixit's records, which reflect that she returned the claimant to work in May 2017.

R. 33 (emphasis added); *see also* R. 34 (assigning "some weight" to the another physician's findings because "while I find Dr. Dixit's opinion that the claimant was capable of returning to work to be consistent with her treatment notes, Dr. Dixit does not explain why the claimant was limited to light work duty, and *there is no evidence elsewhere in the record to support a finding that she suffers from any significant exertional limitations*") (emphasis added). Accordingly, based on this record, even if the ALJ erred by not finding other severe impairments, including lumbar and cervical degenerative disc disease, any such error at step two is harmless. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6; *cf. Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."); *Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121 (3d Cir. 2008) ("We recently made clear that ALJs need not cite specific Listings at step three as long as the ALJ's review of the record permits meaningful review of the step-three conclusions.").

Plaintiff nevertheless attacks the ALJ's consideration of this claimed impairment, complaining that it "remained unmentioned at step 3[,]" and pointing to Plaintiff's presentation in 2016 for emergency room treatment and to the results of MRIs of her lumbar and cervical spine during that visit; to a 2018 MRI; and to Plaintiff's complaints of back pain to a consultative examiner and to a treating physician. *Plaintiff's Brief*, ECF No. 18, pp. 18−19. Plaintiff has not persuaded the Court that this issue requires remand. As a preliminary matter, Plaintiff, who bears

the burden at step three, simply cites to this record evidence without any substantive discussion as to how this evidence establishes that Plaintiff met or medically equaled any listing at step three and, notably, identifies no such listing. *See id.*; *see also Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005) ("The burden imposed on a claimant at step three is a far more exacting standard than step two's threshold (used to prevent frivolous claims), which requires that a claimant show that she suffers from a 'severe' impairment."). The Court will not construct Plaintiff's arguments for her. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."); *cf.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (addressing disorders of the spine, resulting in compromise of the nerve root or spinal cord and with evidence of nerve root compression; or spinal arachnoiditis confirmed by an operative note or pathology report of tissue biopsy or by medically acceptable imaging; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging and resulting in an inability to ambulate effectively); *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding that an ALJ's conclusory statement at step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence"). Finally, to the extent that Plaintiff relies on her own subjective complaints of pain to support her argument that she meets or medically equals some otherwise unidentified listing, the

ALJ not only noted that these complaints were not persistent, R. 17, he also reasonably discounted those complaints for the reasons explained later in this decision.

Next, Plaintiff appears to complain that the ALJ erred in his finding that Plaintiff had the RFC to perform a full range of work at all exertional levels. *Plaintiff's Brief*, ECF No. 18, pp. 19−20. Plaintiff argues that this finding renders the effect of her "multilevel disc disease/proven spinal disorders" on her ability to perform exertional activities "entirely meaningless and completely irrelevant[,]" again pointing to MRI evidence and to Plaintiff's subjective complaints. *Id*. For the same reasons as were discussed above, these arguments are unavailing. In addition, to the extent that Plaintiff points to findings on MRIs reflecting "significant spinal pathology[,] *id.* at 19, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"); *Putman v. Colvin*, No. 3:15-CV-412, 2016 WL 1301048, at *7–8 (M.D. Pa. Apr. 4, 2016) (affirming denial of benefits where the claimant "has failed to point to any evidence that the diagnoses identified above [non-severe physical impairments of hypertension, diabetes mellitus, obesity, degenerative disc disease of the cervical spine, and carpal tunnel syndrome] actually resulted in any limitation or restriction related to any functional capacity"). Notably, Plaintiff does not identify specific functional limitations found by any medical source that the ALJ failed to include in the RFC. *See Plaintiff's Brief*, ECF No. 18, pp. 19−20; *see also Grella v. Colvin*, No. 3:12-cv-2115, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot

14

be found in the medical record."). As previously discussed, the ALJ specifically considered

Plaintiff's physical impairments when fashioning the RFC. R. 33–34.  Plaintiff cites to no

medical evidence documenting how her lumbar and cervical degenerative disc disease condition

impairs her functioning or results in greater or different restrictions than those found by the ALJ

and which would lead to a different outcome. Plaintiff's argument, therefore, boils down to

nothing more than a disagreement with the ALJ's decision, which the Court has already

explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–

15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the

ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of*

*Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard

to their impact on the RFC determination even when those impairments are considered not

severe, Plaintiff does not articulate what additional restrictions should have been implemented. It

is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the

ALJ's consideration of her non-severe impairments amounts to mere disagreement with his

analysis rather than showing any substantive error."). Accordingly, considering the fact that the

ALJ specifically considered Plaintiff's physical impairments when crafting the RFC, the ALJ's

failure to expressly mention degenerative disc disease at step four is, at most, harmless error and

does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden

of showing that an error is harmful normally falls upon the party attacking the agency's

determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling

caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because

it would not affect the outcome of the case"); *cf. Avilla v. Colvin*, No. 15-2857, 2016 WL

2930512, at *6–7 (D.N.J. May 18, 2016) ("[T]he the RFC was not required to reflect a whole

range of physical limitations, particularly those that were not even claimed in her application[.]").

In continuing to challenge the severity of her "spinal disorders" and, apparently, the impact of those disorders on the RFC, Plaintiff contends that the ALJ improperly relied on his own lay opinion that Plaintiff's "anti-inflammatory and muscle relaxant medications aren't enough to establish a severe impairment because she doesn't take narcotic pain medication," without considering the potential conflict with Plaintiff's dependence on anxiolytics. *Plaintiff's Brief*, ECF No. 18, p. 21 (citing R. 17). Even if the ALJ erred in his consideration in this regard, this was but one factor considered by the ALJ when determining that Plaintiff's lumbar and cervical degenerative disc disease was not severe. R. 17. The Court is not persuaded that this issue establishes reversible error.

Plaintiff goes on to criticize the ALJ's consideration of Plaintiff's activities, such as doing laundry, vacuuming, and picking up after her dogs, and contends that these "transitory activities performed painfully" were "given outsized importance[.]" *Plaintiff's Moving Brief*, ECF No. 18, pp. 21–22. This Court disagrees. The ALJ properly considered Plaintiff's ability to engage in these regular physical activities—in conjunction with the objective medical evidence— when determining the severity of Plaintiff's lumbar and cervical degenerative disc disease and when crafting the RFC. *See* 20 C.F.R. §§ 404.1520(c), 404.1545(b), (c); *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020) (noting that the ALJ concluded at step two that the claimant "had nonsevere impairments of degenerative disc disease status post-surgery, degenerative joint disease of the right knee and bilateral patellofemoral syndrome" and that, "[i]n forming this determination, the ALJ considered [the claimant's] treatment records and testimony concerning her activities of daily living, which demonstrated that these impairments did not

result in more than a minimal impact on [the claimant's] ability to perform some work-related activities").

Finally, Plaintiff's assertion that the ALJ's finding that Plaintiff's lumbar and cervical degenerative disc disease was non-severe "*likely* changed the outcome of the decision[,]" *Plaintiff's Moving Brief*, ECF No. 18, p. 22 (emphasis added), amounts to rank speculation unsupported by the record for the reasons previously discussed.

In short, for all these reasons, the ALJ's consideration of Plaintiff's lumbar and cervical degenerative disc disease throughout the sequential evaluation process enjoys substantial support in the record.

### B.    Insomnia

Plaintiff also challenges the ALJ's finding Plaintiff's insomnia was non-severe and she complains that the ALJ did not properly consider this impairment at steps three and four of the sequential evaluation process. *Plaintiff's Brief*, ECF No. 18, pp. 22–27. This Court disagrees.

As previously noted, the ALJ found in Plaintiff's favor at step two, but determined that Plaintiff's insomnia was non-severe, explaining as follows:

> As for the claimant's alleged insomnia, the record reflects that she complained of poor sleep prior to her alleged onset date, and that it was being treated with Lunesta by Dr. Jorge Quintana, her former psychiatrist at Quintana Psychiatric Care (Exhibit 6F). Recent records from Dr. Lukenda also document an ongoing diagnosis of insomnia during the period under consideration, and records from The Counseling Center reflect that she continues to complain of only a few hours of sleep a night, and that her recent medications for sleep have included Trazodone and Lunesta (Exhibits 10F, 13F, 21F).

> However, despite her insomnia Dr. Quintana assessed the claimant was capable of returning to work as of June 15, 2017, starting at two hours a day, and working up to a full-time work schedule. In addition, and as discussed in greater detail later in this decision, there is evidence that the claimant applied for jobs and looked for work unsuccessfully thereafter (Exhibits 10F, 16E). Records from Dr. Lukenda reflect that the claimant denied any problems with fatigue during her visit with him on December 11, 2018, even though Dr. Lukenda noted in a Medical Report he

17

completed for Cigna that day that fatigue was one of the reasons she could not work (Exhibit 20F). Records from The Counseling Center also reflect that while the claimant had difficulty falling and staying asleep on December 28, 2018, she [w]as not using any sleep aids at that time, and records from Dr. Galski, the claimant's psychologist, reflect that Trazodone has been prescribed to treat her depression (Exhibits 17F, 21F). In addition, records from The Counseling Center document no diagnosis of insomnia even though the claimant's sleep problems are treated with medication through the center (Exhibit 21F). There is also no evidence that the claimant's issues with insomnia have been severe enough to warrant a referral to a sleep specialist. Based on this evidence, I find that while the claimant may continue to suffer from insomnia, it is not sufficiently severe to cause more than a minimal effect on her ability to perform basic work related activities and I find it to be not severe.

R. 17–18.

Although the ALJ did not expressly consider Plaintiff's insomnia at step three, he did, as previously discussed, state that he reviewed the medical record in determining whether Plaintiff suffered "from any physical or mental impairments, or combination of impairments, that meet or medically equal any listing[,]" and found that Plaintiff did not. R. 18 (stating further that the record "contains no opinions from the claimant's treating physicians that any of her impairments are of listing level severity"). In addition, when finding at step three that Plaintiff had moderate limitations in, *inter alia*, her ability to understand, remember, or apply information, and in her ability to concentrate, persist, or maintain pace, the ALJ specifically considered Plaintiff's memory problems and difficulty concentrating or focusing, symptoms that purportedly resulted from her insomnia. R. 19. Based on these findings, the ALJ explained that Plaintiff retained the ability to understand, remember, and carry out simple routine tasks for two-hour periods over a 40-hour workweek, "a finding supported by the State agency psychological consultant [on reconsideration.]" *Id.* Further, at step four, the ALJ explicitly considered Plaintiff's complaints of insomnia and specifically considered manifestations of insomnia apparently complained of by Plaintiff—*i.e.,* fatigue, memory problems, and difficulties in concentrating or focusing—when

18

crafting the RFC. R. 21, 22, 26–31, 33. Accordingly, even if the ALJ erred by not finding other severe impairments, including insomnia, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6; *cf. Klangwald*, 269 F. App'x at 204; *Lopez*, 270 F. App'x at 121.

Plaintiff nevertheless attacks the ALJ's consideration of Plaintiff's insomnia, arguing that there is "ample medical evidence" to establish "its logical effect on her physical and mental ability to sustain a 40 hour workweek." *Plaintiff's Brief*, ECF No. 18, p. 24. Plaintiff, however, provides no citation to the record for "ample medical evidence" establishing such unidentified functional effects, *see id.*, and the Court will not hunt through the cited pages to find evidence for her. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Plaintiff next contends that the ALJ impermissibly relied on his own lay opinion when considering Plaintiff's "plucky but utterly unsuccessful attempt to return to work in 2017," but failing to consider her "spectacular work record" in determining that her insomnia was not severe. *Plaintiff's Brief*, ECF No. 18, p. 24. The Court is not persuaded that the ALJ improperly considered Plaintiff's attempt to return to work when determining the severity of her insomnia. *Cf. McCartney v. Comm'r of Soc. Sec.*, No. CIV.A.07-1572, 2009 WL 1323578, at *15 (W.D. Pa. May 8, 2009) (finding no error in the ALJ's reasoning at step two when finding headaches were not severe where the ALJ considered, *inter alia*, the claimant's desire to return to work). In

any event, this was but one factor considered by the ALJ when finding that Plaintiff's insomnia was not a severe impairment. R. 17–18.

Plaintiff also criticizes what she characterizes the ALJ's consideration of Dr. Lukenda's inclusion of plaintiff's insomnia-related fatigue "as among 'the reasons she could not work' because on that single same day, December 11, 2018, plaintiff didn't report any problems with fatigue."[5] *Plaintiff's Brief*, ECF No. 18, pp. 24–25. Plaintiff's conclusory criticism in this regard simply boils down to a disagreement with the ALJ, which is not sufficient to establish reversible error. *See Perkins*, 79 F. App'x at 514–15; *Markoch*, 2020 WL 7586953, at *4-5. To the extent that Plaintiff relies on diagnoses of insomnia to support her argument, *Plaintiff's Brief*, ECF No. 18, p. 25, the Court has already explained that a mere diagnosis, without more, is insufficient to establish the severity of an impairment. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780; *Putman*, 2016 WL 1301048, at *7–8.

Plaintiff goes on to complain that the ALJ failed to account for limitations flowing from her insomnia, including having "no off-task allowances or excessive absences." *Plaintiff's Brief*, ECF No. 18, pp. 25–26. Plaintiff's argument is not well taken. As previously discussed, the ALJ specifically considered manifestations of insomnia complained of by Plaintiff—*i.e.*, fatigue, memory problems, and difficulties in concentrating or focusing—when fashioning the RFC. R. 21, 22, 26–31, 33. In addition, the ALJ included a restriction in the RFC for carrying out only simple routine tasks for two-hour periods. R. 20. Notably, Plaintiff points to no record evidence supporting her allegation that she would have "excessive absences." *Plaintiff's Brief*, ECF No.

---

[5] Kevin Lukenda, M.D., Plaintiff's treating physician, examined Plaintiff on December 11, 2018, and noted, *inter alia*, Plaintiff's complaints, which did not include complaints of fatigue. R. 539. Although the ALJ cites to Exhibit 20F, R. 527–46, which purportedly contains Dr. Lukenda's report to Cigna from the same date, the Court did not find that report in that exhibit.

18, p. 26. As previously noted, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Grella*, 2014 WL 4437640, at *18.

In short, even if the ALJ erred in finding at step two that Plaintiff's insomnia was not severe, any such error is harmless because the ALJ found that other impairments were severe. R. 16. The ALJ continued to evaluate Plaintiff's insomnia, or the manifestations of that impairment, through the remainder of the five-step sequential evaluation. R. 18–33. Accordingly, Plaintiff has not shown that the ALJ's consideration of Plaintiff's insomnia—including a failure to find that impairment severe at step two—warrants remand.

## C.    Subjective Statements and Opinion Evidence

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Moving Brief*, ECF No. 18, pp. 27–32. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

21

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 22–23. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." *Id*. The ALJ detailed years of medical evidence and record testimony over approximately thirteen pages to support his findings, including normal EEGs and MRIs since 2016; normal neurological examinations; Plaintiff's activities of daily living; and no evidence that she experiences side effects from her medications. R. 21–33. In doing so, the ALJ also specifically explained, *inter alia*, as follows:

> All of the foregoing evidence supports a finding that while the claimant may continue to suffer from and require ongoing treatment for anxiety, depression, PTSD, and anxiolytic dependence any symptoms or mental functioning limitations associated with these impairments are not sufficiently severe or frequent to preclude the range of work identified in the residual functional capacity set forth in this decision.

> Finally, to the extent that the claimant testified to limitations greater that those that I have found, I did not find her testimony as to the alleged severity and/or frequency of her symptoms to be consistent with the record as a whole. The claimant failed to submit a great deal of evidence in this claim, including records from High Focus and Serenity, that were relevant to her claim. She also submitted no records confirming that she has received or continues to receive long-term disability benefits. The record also reflects that the claimant was caring for her mother, who has medical issues of her own, prior to her alleged onset date, and it appears likely that she continues to provide some sort of help to her mother since. The record also reflects that the claimant was returned to work by Dr. Dixit and Dr. Lukenda in 2017, and that she submitted job applications in December 2017 and January 2018. While her job search appears to have been unsuccessful at the time, this evidence supports a finding that both the claimant and her medical providers considered her capable of returning to some level of work activity. The record also reflects that despite her alleged social anxiety, her inability to leave the house, and problems with her memory and concentration, the claimant was able to regularly attend AA/NA meetings and group mental health therapy at High Focus in 2017, and that she can go to the grocery store with her mother, vacuum, do her laundry, and pick up after her dog in the yard (Exhibits 16F, 6E, Hearing Testimony). It also documents her reports that she is currently in a relationship, that she "tons" of friends and that she occasionally gets visits from friends and co-workers (Exhibits 21F, 16F, 6E). While none of this evidence demonstrates the claimant's ability to sustain basic work-related activities, it seems inconsistent with her allegations that her physical and/or mental impairments are of sufficient severity to preclude them or that her mental functioning limitations are more than moderate in degree. There is also no evidence that the claimant suffers from any side effects from her current medications, and recent records from Ms. Chilaka confirm that she does not (Exhibit 21F).

R. 32−33. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

In an apparent challenge to the ALJ's consideration of her subjective statements, Plaintiff complains that "Dr. Lukenda, Dr. Galski, Dr. Quintana, therapist Horvath and the Commissioner's Dr. Yalkowski had their opinions rejected ("little weight") (Tr.34-35) even though these are the only doctors in the record whoever laid eyes on the plaintiff." *Plaintiff's Brief*, ECF No. 18, p. 32. Plaintiff goes on to provide the standard of considering such opinion evidence and case authority explaining when that standard has not been met. *Id*. at 32−38 (citations omitted). Plaintiff then concludes that the ALJ "committed the same errors" as the ALJ in one of her cited cases and that "[o]verwhelming evidence of disability from multiple treating medical professionals, here fully endorsed by the Commissioner's own psychological examiner, were all rejected in favor of the fill-in-the-blank, formatted file-review by a DDS 'medical consultant' who could not have seen over half of the psychiatric evidence." *Id*. at 38−39 (citations omitted). Plaintiff, however, does not explain in this conclusory assertion how the ALJ erred with respect to his consideration of the findings and opinions of the physicians or providers whom she identifies, nor has she explained how any otherwise unidentified findings or opinions support her subjective statements. *See id*. As previously discussed, the Court will not construct Plaintiff's arguments for her. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553; *Padgett*, 2018 WL 1399307, at *2. This undeveloped assertion does not establish that remand is warranted.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are

supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 10, 2023                                 *s/Norah McCann King*
                                                                        NORAH McCANN KING
                                                                        UNITED STATES MAGISTRATE JUDGE